MAX MAYERS, EXECUTOR OF THE WILL OF JOE DANIEL, DECEASED, v. BANK OF BLADEN, REXFORD SQUIRES, AND L. E. SQUIRES.

(Filed 2 April, 1930.)

1. **Bills and Notes D b: D c—One signing note as maker is primarily liable to holder and is not discharged by extension.**

The negotiable instrument law fixes the liability of the parties on a negotiable instrument, and where a party signs a note as maker, C. S., 2977, he is primarily liable thereon to a holder in due course, and he may not claim to be secondarily liable as an accommodation endorser (C. S., 3009), contrary to the express terms of the instrument as against a holder who acquires for value before maturity, and his position that he was discharged by an extension of time of payment given to another whose name appears on the instrument as endorser is not meritorious.

2. **Mortgages F d—Where holder of note takes a mortgage from surety and buys in property at tax sale, maker is not entitled to have note credited with value of land.**

Where the one primarily liable on a negotiable note for which one secondarily liable has given as additional security a mortgage on lands, and the holder for value before maturity has recovered judgment against those liable on the note, and then has bought in the land mortgaged as additional security at a tax sale and has received from the sheriff a tax deed therefor: *Held*, the one primarily liable upon the instrument has no equity of subrogation or otherwise to require the holder of the instrument to apply as a credit on the note the value of the land for which he received the tax deed, the mortgagor of the land not appealing from the judgment of the lower court.

APPEAL by plaintiff from *Grady, J.*, at January Term, 1930, of BLADEN County. Affirmed.

On 1 May, 1920, Joe Daniel executed and delivered to L. E. Squires two notes under seal, each in the sum of $2,000 with interest at 6 per cent, the first due 15 December, 1920, and the second 1 January, 1921. L. E. Squires and Rexford Squires, his son, endorsed them in blank, and on 15 September, 1920, the Bank of Bladen bought them. The bank alleged that it purchased them for value, before maturity, and without notice of any equities in favor of the maker or endorsers. On 15 September, 1920, at the time the bank bought the notes, Rexford Squires executed to the bank a mortgage on two tracts of land in Bladen and Columbus counties to secure the indebtedness evidenced by the two bonds which Joe Daniel had executed to L. E. Squires.

The Bank of Bladen on 13 February, 1923, instituted an action and secured a judgment against Joe Daniel and Rexford Squires on the two notes referred to above and obtained a decree for the foreclosure of the mortgage. On 21 January, 1926, Joe Daniel borrowed from the bank the sum of $375, which added to the judgment amounted to $4,635, and

to secure the payment of the judgment and the amount borrowed he assigned to the bank certain mortgages which he held and conveyed to it certain articles of personal property. He expressly agreed that the judgment against him should remain in force and effect, and that this instrument should be additional security. The amount thus secured was reduced by subsequent payments.

The plaintiff, as executor, brought the present suit on 16 January, 1929, to cancel the judgment which had been recovered against Joe Daniel by the Bank of Bladen. Judge Grady gave judgment for the plaintiff against L. E. Squires and Rexford Squires, who did not appeal, and judgment of nonsuit as against the Bank of Bladen and from the judgment of nonsuit the plaintiff appealed.

*I. C. Wright for plaintiff.*
*H. H. Clark for Bank of Bladen.*

ADAMS, J. As revealed by the complaint the plaintiff's theory of the case is substantially as follows: L. B. Squires bought two tracts of land from George Currie and had the deed made to his son Rexford Squires, who held the legal title as agent or trustee for his father; the debt secured by the mortgage executed by Rexford Squires to the Bank of Bladen was the debt of L. E. Squires; the notes endorsed to the bank by L. E. Squires and Rexford Squires were executed by Joe Daniel, the plaintiff's testator, without receiving value, and for the accommodation of the payee; the bank knew that the notes were accommodation paper; at most Daniel was only a surety; the bank extended the time of payment without the knowledge or consent of Daniel, and permitted L. E. Squires to cut the timber from the mortgaged land and dispose of it without applying it on the debt, thereby releasing Daniel from liability on the notes; and for these reasons the plaintiff is entitled to a cancellation of the judgment which is a lien on the testator's real estate.

The evidence does not support this theory. Daniel executed the two notes 1 May, 1920; the bank bought them 15 or 16 September, 1920, and required a mortgage which was then given by Rexford Squires as additional security. Ostensibly, then, Daniel was the primary debtor. Under the Negotiable Instruments Law the person primarily liable on an instrument is the person who by the terms of the instrument is absolutely required to pay it, and all other parties are secondarily liable. C. S., 2977. An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or endorser, without receiving value therefor, and for the purpose of lending his name to some other person. C. S., 3009. The accommodation party referred to in this section is regarded as the one primarily liable under the provisions of section 2977. 5 Uniform Laws Annotated, 528. The position that by execut-

ing an accommodation note the maker merely lends his credit to the payee and does not become liable to him does not warrant the conclusion that the maker is not liable to a holder for value. By the terms of the statute an accommodation party is liable to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party. C. S., 3009. A holder for value is not necessarily a holder in due course. 5 Uniform Laws Annotated, 212. The general rule is that the maker of an accommodation note is liable to a holder for value with or without notice of the character of the maker's obligation. 5 Uniform Laws, Supplement 1928, page 80. It follows that knowledge of an endorsee for value that the note was given for the accommodation of the payee is not a defense to an action by the endorsee against the accommodating maker. Brannan's Neg. Ins. Law, 4 ed., 270. But there is evidence tending to show that the Bank of Bladen was not only a holder for value, but a holder in due course. C. S., 3033. The bank denied that the notes were accommodation paper, but if it be granted that they were, the fact cannot under the circumstances disclosed by the evidence avail the plaintiff as ground for relief.

It is manifest from what has been said that the plaintiff's position with respect to the alleged suretyship of his testator is not meritorious. It is an extension of time given by a creditor to the principal debtor which under certain conditions discharges the surety from liability; but a release of the surety does not usually affect the liability of the principal. The debt due the bank may have been the debt of L. E. Squires; but as between the bank and the maker of the note the question of primary liability is fixed by the terms of the instrument. We find no evidence whatever that the bank by extending the time of payment to the mortgagor or by permitting timber to be removed from the land intended to do anything, or did anything, to impair its right to hold the maker of the notes to his primary liability for the debt.

The mortgagor failed to pay the taxes due on the land described in the mortgage executed by Rexford Squires to the Bank of Bladen, and the county of Columbus brought suit against the bank and others for the collection of the tax. Commissioners duly appointed sold the land and the bank became the purchaser. The plaintiff contends that as the mortgagee purchased the mortgaged property at a tax sale and received a deed for it the mortgagor can elect to have the mortgagee credit the mortgage debt with the value of the land. It will be noted, however, that the mortgagor has not appealed. He seems to be content with the judgment. The plaintiff's testator, as we have seen, was primarily liable to the bank, and the plaintiff is not in a position to be subrogated to any rights the defaulting mortgagor may have had.

The record is inconsistent with the plaintiff's contention. The testator not only suffered judgment to be entered against him on the notes; after the judgment was docketed he borrowed money from the bank and secured both the amount borrowed and the docketed judgment by his own mortgage and his assignment of other securities to the bank. With knowledge of existing conditions he admitted his indebtedness and attempted to make the bank secure. We have discovered no valid reason in law or equity for granting the relief sought by the plaintiff upon his complaint and his evidence.

Judgment affirmed.