MARSHALL COUNTY BANK *v.* C. D. FONNER *et al.*

(No. 7377)

Submitted February 28, 1933.   Decided March 7, 1933.

*McCamic & Clark* and *Jay T. McCamic,* for plaintiff in error.

*James T. Miller,* for defendant in error.

HATCHER, JUDGE:

The Marshall County Bank was a holder for value of a note which matured on October 1, 1931.   C. D. Fonner was the principal maker of the note, and H. W. and D. V. Perkins were accommodation makers, which relationship was known to the bank.   On October 8th, the bank accepted from Fonner two months' interest in advance, extending the maturity of the note to November 30th.   This extention was without the knowledge or consent of the accommodation makers who now take the position that they were merely sureties and the extension released them from liability, as a matter of law. The circuit court entered a judgment against them on the note, and they secured a writ of error.

Bigelow on Bills, etc. (3d Ed.), sec. 207 (in a *resume* of sections 119 and 120 of the Negotiable Instruments Law) says: ''The unwritten rule of discharge of surety parties to negotiable instruments by release or extension of time to the principal debtor, whatever his position on the instrument, re-

mains unaltered, with the single exception that *the accommodation maker or acceptor,* having assumed on the paper the position of a principal (or co-principal) debtor, may be treated as such by the holder, in dealing with other parties to the instrument. Nor does the circumstance that the holder knew of the suretyship alter the result." Accord as to accommodation maker not being so discharged: Whitley on Bills, etc., 179; 5 U. L. Ann. (Neg. Inst.) 622; 8 C. J., subject Bills and Notes, sec. 431, p. 276; annotation 48 A. L. R. 716; Brannan, Neg. Inst. Law (5th Ed.), pp. 883 and 904; Eaton & Gilbert, Comm. Paper, sec. 123, f, p. 551.

Counsel for the appellants make no effort to stem this current of authority, but contend that no matter what the law was under the uniform N. I. L., as contained in our Code 1923, (ch. 98A), Code 1931, 46-8-2 (d), restored the common law defenses of a surety, one of which is his release from liability by an extension of time to the principal debtor without the surety's consent. See *Glenn* v. *Morgan,* 23 W. Va. 467. Subsection (d) *supra,* relied upon by counsel, is as follows: "This section does not include the rules governing the discharge of a surety or party secondarily liable because of such secondary liability." The position of counsel may be treated (but not decided) as correct without affecting the status of this case, as an accommodation maker is regarded not as secondarily liable, but as primarily liable under the N. I. L. Section 192 of that Law (unchanged in Code 1931, 46-17-2) defines one primarily liable on an instrument as "the person who by the terms of the instrument is absolutely required to pay the same." N. I. L., section 29 (unchanged in Code 1931, 46-2-6), specifically provides that notwithstanding the knowledge of a holder (for value) that a maker is an accommodation party, he is directly "liable on the instrument" to the holder. In other words, the obligation of the accommodation party is absolute to pay the holder "on the basis of what is written on the paper." *Union Tr. Co.* v. *McGinty,* 212 Mass. 205, 207, 98 N. E. 679. The relation of the co-makers to each other is of no consequence to the holder. As was said in *Bank* v. *Toplitz,* 81 N. Y. S. 422, 423, "No other question of liability can arise in this case, than such as appears upon the face of the instrument." John J. Crawford of the New York Bar, moralized on

this innovation of the N. I. L. in the following pointed manner: "When a man signs a note as the principal obligor, he cannot complain if he is treated as being in fact what he appears to be on the face of the paper. * * * Indeed the rule that an extension of time granted to the principal, discharges the surety, without proof of any loss or injury to him, is based upon considerations that are theoretical, rather than practical; and when this rule is applied in favor of one, who upon the face of a negotiable instrument has assumed a primary liability, gross injustice is likely to result." Crawford's Ann. Neg. Inst. Law 201. Accordingly, the courts with practical unanimity have held that an accommodation maker is primarily liable. *Bank* v. *Mangelson*, 166 Minn. 472, 208 N. W. 186; *Rogers* v. *Farnsworth*, 181 Ark. 590, 27 S. W. (2d) 507; *Murphy* v. *Panter*, 62 Or. 522, 125 P. 292; *Jamesson* v. *Bank,* 130 Md. 75, 99 A. 994; *Myers* v. *Bank*, 198 N. C. 542, 152 S. E. 628; *Bank* v. *Toplitz, supra; Union Tr. Co.* v. *McGinty, supra,* 727 ; *Brannan, supra*, 1088-9; Ann. Cases 1913C, 528.

Counsel place some reliance on the observation in the Revisers' note to Code, 46-8-1, that the substitution of certain words in section 1 left questions of suretyship "to be dealt with as at common law." We assume that the Revisers did not intend their observation to apply to the entire N. I. L., but merely to the effect section 1 had on sureties. Besides, the question here is one of primary liability and not of suretyship.

The judgment of the circuit court is therefore affirmed.

*Affirmed.*